FILED

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

12:45 pm, 9/23/26

Margaret Botkins
Clerk of Court

# United States District Court

For The District of Wyoming

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>JUANA SIMENTAL,<br>Defendant. | Case No. 26-CR-59-R |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS [36]

This matter is before the Court on Defendant Juana Simental's Motion to Suppress Firearms and Derivative Evidence Obtained During the Execution of the March 24, 2026, Search Warrant. [ECF No. 36]. Having reviewed the Motion, Response, and arguments made during the September 17, 2026, hearing on the matter, the Court denies the Motion.

### Background

On May 21, 2026, the Defendant was indicted on one count of possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). [ECF No. 1]. The indictment arose from the March 27, 2026, search of the Defendant's apartment by the Wyoming Division of Criminal Investigation ("DCI") Central Enforcement Team ("CEET"), that resulted in the seizure of an AR-15 short-barreled rifle that was not registered to the Defendant in the National Firearms Registration and Transfer Record.

Defendant Juana Simental seeks an order suppressing all firearms, ammunition, magazines, and any evidence derived therefrom including statements that were obtained from

the execution of the March 24, 2026, search warrant and the cellular phone which was the subject of the warrant.

***1. The Investigation***

On March 24, 2026, Special Agent ("SA") Michael Paschke applied for and obtained a search warrant authorizing the search of the Defendant's residence, vehicle, and premises for "Cellular phone(s) owned and/or utilized by Juana Simental including but not limited to a cellular phone utilizing (###-###-6717)." [ECF No. 36-2]. SA Paschke applied for the search warrant when information was obtained in a prior investigation showing the Defendant had communicated with another individual, via a cellular phone, regarding a known drug distribution operation. [ECF No. 41-2, at 4]. On March 27, 2026, DCI agents executed the search warrant at the Defendant's residence in Casper ,Wyoming. [ECF No. 41-1, at 1]. During the execution of the search warrant, the Defendant was located within her home and was removed and questioned by agents in a DCI vehicle parked outside. *Id*. During the search, agents located multiple cellular phones, including an iPhone, in plain view on the kitchen counter. *Id*. Agents found additional cellular devices during the search of her residence, but none of the other phones were collected "due to an interview with [the Defendant] identifying her device." *Id*.

During the search, agents also located a black tote-style container and a soft rifle bag underneath a bed. *Id*. The tote contained two pistols, magazines, and sorted ammunition, while the soft rifle bag held an AR-15-style short-barreled rifle. *Id*. After the discovery of the firearms and ammunition, agents obtained new search warrants for the firearms and the Defendant's cellular phone. Afterward, the Defendant was interviewed and made inculpatory statements.

2. ***Motion to Suppress [ECF No. 36]***

The Defendant moves under the Fourth Amendment and Rules 12(b)(3)(C) and 41(h) of the Federal Rules of Criminal Procedure to suppress the AR-15 rifle, Glock pistol, Smith & Wesson pistol, all magazines, and ammunition, the seized cellular phone, all statements, all derivative evidence, and all related photographs, reports, testimony, and forensic evidence. [ECF No. 36]. The Defendant argues the agents' actions violated her constitutional rights as the Fourth Amendment requires particularity as to the place to be searched and the things to be seized, and a warrant for specific property does not authorize a general exploratory search. *Id*. at 3. Further, once the objective of the warrant is accomplished, agents may not continue searching areas unrelated to that objective. *Id*.

The Defendant asserts that the warrant authorized only the search for her cellular telephone, and that agents located and identified the phone, declined to seize other devices because they had identified the Defendant's phone, and then continued searching concealed areas until firearms were found under a bed. *Id*. at 4. The Defendant contends that the continued search was not authorized and converted the search into an unconstitutional exploratory search. *Id*. The Defendant claims that once the cellular phone was found and identified, the objective of the warrant was satisfied, and further search exceeded the warrant's scope. *Id*.

The Defendant claims that discovery of the firearms and ammunition resulted directly from the unlawful expansion of the search because the disputed evidence was not in plain view and was discovered only through the unauthorized search. *Id*. at 4–5. The Defendant further argues that the subsequent "piggy-back" warrant was supported solely by probable cause arising from the unlawful search and that suppression is the appropriate remedy. *Id*. at 5.

***3. Government's Response [ECF No. 41]***

In response, the government argues that under the totality of the circumstances, the agents acted reasonably because the warrant authorized a search for cellphone(s), contemplating multiple devices; the investigating agents knew multi-phone use is common in drug operations; and the agents continued the search until confident all phones had been located. [ECF No. 41, at 5]. The government further contends that agents only looked inside the tote and rifle case under the bed because phones could reasonably be concealed there. *Id*. The government asserts the Defendant's phone was not seized until after the firearms discovery and issuance of the piggyback warrant. *Id*. at 6

The government then argues that even if the scope of the search warrant was exceeded, the cellphone evidence and non-firearm statements should not be suppressed as fruit of the poisonous tree. *Id*. Such an analysis requires the Defendant to establish a causal link, with evidence suppressible if discovered only because of the violation. *Id*. at 6–7. The government further notes that the Defendant does not challenge the original warrant or probable cause statement, the subsequent phone-content warrant, or the Miranda/waiver/voluntariness of the interview. *Id*. at 4. The government thus contends that agents obtained an independent basis during their preexisting investigation to question the Defendant about drug offenses and search her phone. *Id*.

The government concedes that, if a scope violation is found, statements made about firearms should be suppressed, but contend that drug-related evidence and statements should not. *Id*. at 6. The government also argues that inevitable discovery applies because the firearms were seized pursuant to a separate judicially authorized warrant, whereas the phone

evidence of drug offenses and related statements would have been discovered through the independent, pre-existing probable cause already reviewed by a judge. *Id*. at 7.

The government asks that the Court deny the Defendant's Motion based on the finding that agents did not exceed the scope of the warrant. *Id*. at 9. Alternatively, if the Court determines that the search violated the scope of the search warrant, the government asks that evidence related to the drug offenses, including phone contents and non-firearm statements, not be suppressed based on independent probable cause and inevitable discovery. *Id*.

## RELEVANT LAW

The Fourth Amendment protects an individual's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The following must exist for searches and seizures conducted pursuant to a warrant to be lawful under the Fourth Amendment: 1) the warrant must be issued by a neutral judge; 2) the warrant must be supported by probable cause to believe the evidence will assist in the investigation for a particular offense; and 3) the warrant must specifically describe the items to be seized and location to be searched. *Mink v. Knox*, 613 F.3d 995, 1003 (10th Cir. 2010) (quoting *Dalia v. United States*, 441 U.S. 238, 255 (1979)).

> "A search warrant must be supported by probable cause, requiring more than mere suspicion but less evidence than is necessary to convict." [*United States v.*] *Danhauer*, 229 F.3d [1002,] at 1005 [(10th Cir. 2000)] (internal quotation marks omitted). "Probable cause exists when the facts presented in the affidavit would warrant a [person] of reasonable caution to believe that evidence of a crime will be found at the place to be searched." *Poolaw v. Marcantel*, 565 F.3d 721, 729 (10th Cir. 2009) (internal quotation marks omitted).

*United States v. Romero*, 749 F.3d 900, 904 (10th Cir. 2014). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." *United States v. Corral-Corral,* 899 F.2d 927, 937 (10th Cir. 1990). A judicial officer reviewing an

application for a search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The judicial officer "may draw reasonable inferences from the material provided in the warrant application." *United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir. 1998).

Subject to certain exceptions, evidence obtained in violation of the Fourth Amendment may not be admitted in a criminal prosecution. *United States v. Russian*, 848 F.3d 1239, 1244 (10th Cir. 2017) (*citing Mapp v. Ohio*, 367 U.S. 643, 648, (1961)). Not only must a warrant be sufficiently particular, but officers conducting a search must do so "strictly within the bounds set by the warrant" and the seizure of evidence is unconstitutional where the scope of a "search exceeds that permitted by the terms of a validly issued warrant." *United States v. Loera*, 923 F.3d 907, 916 (10th Cir. 2019) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395 n.7, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Horton v. California*, 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)).

**Factual Findings**

The following facts are taken from the Defendant's Motion to Suppress and from the government's Response, as well as information and testimony provided at the September 17, 2026, evidentiary hearing. [1]

[1] During the hearing the parties stipulated as evidence all attachments and exhibits to the briefing.

*a. The Investigation and Underlying Search Warrant*

Beginning in May 2025, DCI SA Michael Paschke became aware of the Defendant's alleged involvement in a drug distribution operation. *Affidavit* [ECF No. 41-1, at 1]; *Suppression Hr'g Test. SA Paschke*. The Defendant was identified as an individual who had distributed methamphetamine to others, and who had traveled from her residence in Wyoming to locations in Colorado to obtain methamphetamine and bring it to Wyoming. Affidavit [ECF No. 41-1, at 1]; *Suppression Hr'g Test. SA Paschke*. SA Paschke obtained ICloud evidence, including text messages to a phone number identified as the Defendant's, detailing the Defendant's trips to Colorado. *Affidavit* [ECF No. 41-1, at 1]; *Suppression Hr'g Test. SA Paschke*.

On March 24, 2026, SA Paschke applied for and was granted a search warrant for the Defendant's residence, vehicle, and person to seize cellular phone(s) by Wyoming 7th Judicial District Circuit Court Judge Cynthia Sweet. *Warrant for Search and Seizure* [ECF No. 41-2, at 1]; *Suppression Hr'g Test. SA Paschke*. The search warrant specifically identified "Cellular phone(s) owned and/or utilized by Juana SIMENTAL including/but not limited to a cellular phone utilizing (###-###-6717)." *Warrant for Search and Seizure* [ECF No. 41-2, at 1]; *Suppression Hr'g Test. SA Paschke*.

*I. March 27, 2026, Execution of Search Warrant*

On March 27, 2026, DCI agents executed the search warrant at the Defendant's residence in Casper, Wyoming. *Suppression Hr'g Test. SA Paschke*. SA Paschke, SA Holder, SA Decker, SA Houser, SA Miles, and SA Birkle all participated in the search of the Defendant's residence. *Id*. After arriving at the residence, agents knocked on the Defendant's door and announced their presence. *Id*. The Defendant answered the door, after which she was detained

and the residence was secured. *Id*. Once the residence was secured, SA Paschke and SA Holder escorted the Defendant to a DCI vehicle parked outside the residence, while the remaining agents executed the search warrant. *Id*.

*II.* *Search of the Residence*

Before conducting the search, SA Tyler Houser photographed the residence to obtain a pre-search overview of the entire scene, including photographs of each room within the residence. *Suppression Hr'g Test. SA Houser*. SA Houser's pre-search photographs showed multiple cellular phones located in plain view in the kitchen. *Id*; Photo Ex. 2. SA Houser continued his pre-search documentation of the scene by photographing each room within the residence. *Suppression Hr'g Test. SA Houser*. After SA Houser completed the pre-search photographic documentation, agents began a thorough search of the residence looking for cellular phones. *Id*. Agents noted the multiple cellular phones in plain view in the kitchen. *Suppression Hr'g Test. SA Decker*; Photo Exs. 3, 5, & 6. An additional cellular phone was located in a dresser drawer of the second bedroom and was later photographed by SA House. *Suppression Hr'g Test. SA Decker*; Photo Ex. 16. The search continued into the residence's master bedroom wherein a tote box and soft gun case were located under the master bed. *Suppression Hr'g Test. SA Decker*. Agents opened the tote and soft case as a potential location for cellular phones. *Id*. The tote contained two handguns, and the soft case held a short-barreled AR-15. Id. Agents informed SA Paschke of the discovery of the firearms. *Suppression Hr'g Test. SA Paschke*.

*III.* *Interview*

Upon securing the residence, SA Paschke and SA Holder detained the Defendant in a DCI vehicle parked outside her residence. *Id*. The Defendant was given her Miranda

advisement, after which she agreed to waive any such rights and speak with agents. Affidavit for Search Warrant [ECF No. 41-2]; *Suppression Hr'g Test. SA Paschke*. During the interview, SA Paschke was contacted by agents within the residence after the discovery of the firearms in the master bedroom. *Suppression Hr'g Test. SA Paschke*. SA Paschke questioned the Defendant about the firearms, to which she stated that she could show receipts for the firearms and asked to be given her phone to do so. *Id*. At that time, the Defendant described her phone, and an iPhone matching that description was identified as one of the phones in plain view in the kitchen. *Id*. Agents took the phone to the Defendant while she was being interviewed. *Id*. After being given her phone, the Defendant showed agents a photo on her phone of a bill of sale for the firearm located in the bedroom. *Id*.

## RULING OF THE COURT

The Court begins its analysis of the instant Motion to Suppress by underscoring the Defendant's assertions and allegations at issue. First, the Defendant does not challenge or question the underlying investigation, or facts and assertions supporting the issuance of the original search warrant issued on March 24, 2026. The Defendant likewise does not question the probable cause statement issued for searching the Defendant's residence and vehicle for cellphone(s) and does not allege a violation of her rights during her interview with agents. The Defendant does not offer any argument or evidence that she was improperly questioned by agents while sitting in a vehicle outside her residence. Rather, the evidence shows the Defendant voluntarily communicated with agents after she was advised of, and knowingly waived, her Miranda rights. Affidavit for Search Warrant [ECF No. 41-2]; *Suppression Hr'g Test. SA Paschke*.

The scope of the dispute is narrowed to the Defendant's argument that the agents' actions impermissibly exceeded the scope of the search warrant by continuing the search after the stated purpose of obtaining her cellular phone was accomplished. The Defendant asserts the agents' actions turned the search into a general exploratory search in violation of the Fourth Amendment. Thus, the Defendant argues that the firearms, ammunition, statements, cellphones, and other forensic evidence must be suppressed as fruits of the poisonous tree.

After obtaining a valid search warrant for the search of cellular phone(s) at the Defendant's residence, DCI agents still "must conduct their search 'strictly within the bounds set by the warrant.'" *United States v. Palms*, 21 F.4th 689, 700 (10th Cir. 2021) (quoting *United States v. Loera*, 923 F.3d 907, 916 (10th Cir. 2019)). "Determining whether a search exceeds the scope of its authorizing warrant is, like most inquiries under the Fourth Amendment, an exercise in reasonableness assessed on a case-by-case basis." *Id*.

Under the totality of the circumstances, agents executing the search warrant of the Defendant's residence acted reasonably within the parameters established by the undisputedly valid search warrant. In general, law enforcement can search for evidence anywhere where it might conceivably be located. *Loera*, 923 F.3d at 916 (citing *United States v. Ross*, 456 U.S. 798, 824 (1982)). The search warrant obtained on March 24, 2026, by SA Paschke identified cellular phone(s) belonging to or utilized by the Defendant, including a phone identified by a telephone number, but it specifically stated it was not limited to that phone alone. Therefore, the agents were justified in searching the Defendant's residence for multiple phones.

Nevertheless, the Defendant's argument is that once the phones were viewed in plain sight in the kitchen, the agents should have asked the Defendant or otherwise identified which phone was hers. The Court finds the timing of the identification of the Defendant's phone is

dispositive of the issue. Having already established that the search warrant specifically authorized agents to search for multiple phones, the issue becomes: when did agents identify the Defendant's phone in relation to the continued search and discovery of firearms in the master bedroom. The government has offered undisputed testimony that the search began by securing the scene and removing the Defendant from her home. The agents' actions must be viewed in light of the underlying circumstances of the situation. The Defendant was removed from the home and taken to a DCI vehicle for questioning. As stated above, there is no argument that the Defendant was not properly advised of her rights, or that her statements were not offered voluntarily and knowingly. The Defendant was in the parking lot being questioned while the search of her home was underway. There is nothing to suggest that the agents had any physical description of the Defendant's phone, and the government has established that they were executing the warrant within the given parameters of a search for cellular phones within the residence. It was not until after the firearms were discovered in the master bedroom that agents conducting the search contacted SA Paschke and informed him of the development. After SA Paschke was informed of the situation, he questioned the Defendant about the firearms and, for the first time, she offered a description of her phone to offer proof of purchase for the firearms. Agents continued the search until they were satisfied that no other phones were within the residence. Agents then concluded the search and obtained a separate search warrant to seize the firearms and to obtain information from the Defendant's phone, while the other phones were not seized.

The Court finds that under the totality of the circumstances, the agents' search of the Defendant's residence was reasonable and conducted within the confines set by the search warrant. *See Loera*, 923 F.3d, at 916 ("Determining whether a search exceeds the scope of its

authorizing warrant is, like most inquiries under the Fourth Amendment, an exercise in reasonableness assessed on a case-by-case basis.") (citing *Dalia v. United States*, 441 U.S. 238, 258 (1979) (holding that the manner of a search is subject to "later judicial review as to its reasonableness")).

## CONCLUSION AND ORDER

Defendant's Motion to Suppress is denied for the foregoing reasons.

**THEREFORE, IT IS HEREBY ORDERED** Defendant's Motion to Suppress [ECF No. 36] is **DENIED**.

Dated this 23rd day of September, 2026.

Kelly H. Rankin
U.S. District Judge